J-A05010-19

2019 PA Super 132

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| TONY JEZZI | : | |
| | : | |
| Appellant | : | No. 992 WDA 2017 |

Appeal from the Judgment of Sentence June 8, 2017
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0013563-2014

BEFORE: GANTMAN, P.J.E., SHOGAN, J., and MURRAY, J.

OPINION BY GANTMAN, P.J.E.: **FILED APRIL 26, 2019**

Appellant, Tony Jezzi, appeals from the judgment of sentence entered in the Allegheny County Court of Common Pleas, following his bench trial convictions for two counts of possession with intent to deliver marijuana ("PWID"), and one count each of possession of marijuana and possession of drug paraphernalia.[1] We affirm.

The relevant facts and procedural history of this case are as follows. In 2014, a confidential informant ("CI") informed Officer William Churilla and Detective David Honick that Appellant was packaging and distributing marijuana from his home. The CI accompanied police to Appellant's residence and identified Appellant's home and vehicle. The police proceeded to pull Appellant's trash and found a large quantity of marijuana residue in one bag

_____

[1] 35 P.S. §§ 780-113(a)(30), (a)(16), and (a)(32), respectively.

and loose marijuana in another bag. Based on the information received from the CI and derived from the trash pull, the police obtained a search warrant for Appellant's home, vehicle, and cell phone. On May 16, 2014, police conducted a search of Appellant's residence and recovered a cannabis grow with approximately 40 plants.[2] The Commonwealth charged Appellant with PWID and related offenses. On July 29, 2015, Appellant filed a motion to suppress, arguing the affidavit of probable cause lacked any reference to the reliability of the CI or the CI's information.

On April 17, 2016, the General Assembly enacted the Medical Marijuana Act ("MMA") at 35 P.S. § 10231.101 *et seq.*, which went into effect on May 17, 2016. Appellant filed two supplemental pre-trial motions on October 11, 2016, including a motion to produce the CI and a motion challenging the continued classification of marijuana as a Schedule I substance under the CSA, following passage of the MMA. In his motion disputing the Schedule I classification of marijuana, Appellant argued that classification is unconstitutional because it denies substantive due process and is not rationally related to a legitimate government interest. Further, Appellant suggested the Schedule I classification of marijuana denies Pennsylvania citizens equal protection under the law because the CSA states marijuana has no medical use for Pennsylvania citizens generally but the MMA sets up a

_____

[2] Marijuana appears as a Schedule I substance in the Controlled Substance, Drug, Device, and Cosmetic Act ("CSA"), at 35 P.S. 780-104(1)(iv).

- 2 -

medical marijuana production, distribution, and certification program for Pennsylvania citizens who are medical patients or medical patient caregivers.

On October 13, 2016, the trial court denied Appellant's motion to produce the CI and the motion to suppress based on the search warrant challenge. That same day, however, the court granted reconsideration of the denial of the motion to produce the CI and scheduled a hearing. Following the April 18, 2017 hearing, the court denied Appellant's motion to produce the CI and Appellant's motion challenging the Schedule I classification of marijuana under the CSA. On April 20, 2017, Appellant filled a petition for permission to file an interlocutory appeal, which the court denied on April 27, 2017.

After a stipulated bench trial on June 8, 2017, the court convicted Appellant of two counts of PWID and one count each of possession of marijuana and possession of drug paraphernalia. That same day, the court sentenced Appellant to an aggregate term of two years' probation. Appellant filed a timely notice of appeal on July 6, 2017. On August 21, 2017, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant timely complied on August 29, 2017.

Appellant raises the following issue for our review:

> DID THE TRIAL COURT ERR WHEN IT DENIED APPELLANT'S MOTION CHALLENGING MARIJUANA'S SCHEDULE I CLASSIFICATION WHEN THE PENNSYLVANIA LEGISLATURE ENACTED A COMPREHENSIVE MEDICAL MARIJUANA

PROGRAM, WHERE MARIJUANA OTHERWISE DOES NOT MEET THE CRITERIA FOR A SCHEDULE I CONTROLLED SUBSTANCE, AND WHERE MARIJUANA'S SCHEDULE I CLASSIFICATION [IS] OTHERWISE UNCONSTITUTIONAL ON ITS FACE?

(Appellant's Brief at 4).

Appellant argues the criminal prohibition of marijuana as a Schedule I controlled substance in the CSA is irreconcilable with the MMA. Appellant contends the General Assembly found marijuana has medical value when it passed the MMA in 2016. Because marijuana is now accepted for its medical value, Appellant asserts it no longer fits within the definition of a Schedule I controlled substance under the CSA, which defines Schedule I substances as having a high potential for abuse, no currently accepted medical use in the United States, and a lack of accepted safety for use under medical supervision. Appellant reasons the MMA is the more recent legislation and takes precedence over the CSA because the two statutes are in conflict.

Further, Appellant maintains that the criminal prohibition of marijuana per the CSA, as a Schedule I controlled substance, denies individuals substantive due process and equal protection of the law. Appellant submits the CSA Schedule I classification of marijuana is not rationally related to a legitimate government interest because the prohibition was based on racial animus and bias. Appellant complains the CSA Schedule I classification of marijuana is arbitrary and capricious without evidence that marijuana ever met the CSA criteria for Schedule I classification; instead, the prohibition

proceeded in accordance with political agendas. Appellant concludes this Court should declassify marijuana as a Schedule I controlled substance.[3] We cannot agree.

Preliminarily, we observe that appellate briefs must conform in all material respects to the briefing requirements set forth in the Pennsylvania Rules of Appellate Procedure. Pa.R.A.P. 2101. ***See also*** Pa.R.A.P. 2114-2119 (addressing specific requirements of each subsection of brief on appeal). Regarding the argument section of an appellate brief, Rule 2119(a) provides:

> **Rule 2119. Argument**
>
> **(a) General rule.**—The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Pa.R.A.P. 2119(a). "[I]t is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities." ***Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa.Super. 2007), *appeal denied,* 596 Pa. 703, 940 A.2d 362 (2008) (internal citations omitted). "This Court will not act as counsel and will not develop arguments on behalf of an appellant." ***Id.*** If a deficient brief hinders this Court's ability

_____

[3] We can only presume Appellant would also want us to reverse his convictions, although he did not ask for that relief.

to address any issue on review, we shall consider the issue waived. ***Commonwealth v. Gould***, 912 A.2d 869, 873 (Pa.Super. 2006) (holding appellant waived issue on appeal where he failed to support claim with relevant citations to case law and record). ***See also In re R.D.***, 44 A.3d 657 (Pa.Super. 2012), *appeal denied*, 618 Pa. 677, 56 A.3d 398 (2012) (holding appellant waived issue, where argument portion of appellant's brief lacked meaningful discussion of, or citation to, relevant legal authority regarding issue generally or specifically; appellant's lack of analysis precluded meaningful appellate review).

Instantly, the substantive due process section of Appellant's argument is underdeveloped and lacks specificity on which of Appellant's constitutional rights is violated by the Schedule I classification of marijuana. Appellant broadly sets forth the law applicable to substantive due process challenges, but he does not identify the specific constitutional right deprived. ***See*** Pa.R.A.P. 2119(a). Instead, Appellant generally claims the Schedule I classification of marijuana "denies due process of law." We decline to make Appellant's argument for him. ***See Hardy, supra***. Accordingly, Appellant waived his claim regarding the deprivation of substantive due process.[4] ***See In re R.D., supra***; ***Gould, supra***.

---

[4] Appellant also failed to develop his claim regarding the deprivation of substantive due process in his pretrial motion, so he waived the claim on that ground as well.

Appellant's remaining constitutional arguments, concerning the proposed conflict between the CSA and the MMA and the alleged violation of equal protection, implicate the following principles:

> [D]uly enacted legislation carries with it a strong presumption of constitutionality. A presumption exists that the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth when promulgating legislation.
>
> > In conducting our review, we are guided by the principle that acts passed by the General Assembly are strongly presumed to be constitutional, including the manner in which they were passed. Thus, a statute will not be found unconstitutional unless it clearly, palpably, and plainly violates the Constitution. If there is any doubt as to whether a challenger has met this high burden, then we will resolve that doubt in favor of the statute's constitutionality.
>
> As the constitutionality of a statute presents a pure question of law, our standard of review is *de novo* and our scope of review is plenary.

*Commonwealth v. Brooker*, 103 A.3d 325, 334 (Pa.Super. 2014) (internal citations and quotation marks omitted).

> > The power of judicial review must not be used as a means by which the courts might substitute its [sic] judgment as to public policy for that of the legislature. The role of the judiciary is not to question the wisdom of the action of [the] legislative body, but only to see that it passes constitutional muster.
>
> Therefore, in assessing a punishment selected by a democratically elected legislature against the constitutional measure, we presume its validity…. [A] heavy burden rests on those who would attack the judgment of the representatives of the people.

*Commonwealth v. Yasipour*, 957 A.2d 734, 741 (Pa.Super. 2008), *appeal*

*denied*, 602 Pa. 658, 980 A.2d 111 (2009) (internal citations and quotation marks omitted).

This appeal involves the interplay of two public safety statutes; the first statute is the CSA, which describes five schedules of controlled substances. 35 P.S. § 780-104.  In outlining the Schedule I substances, the Act states:

> **§ 780-104.  Schedules of controlled substances**
>
> **(1)  Schedule I—**In determining that a substance comes within this schedule, the secretary shall find: a high potential for abuse, no currently accepted medical use in the United States, and a lack of accepted safety for use under medical supervision.  The following controlled substances are included in this schedule:
>
> \*   \*   \*
>
> (iv)  Marihuana.

35 P.S. § 780-104(1)(iv) (effective June 14, 1972).[5]

The second statute is the MMA, which states in its declaration of policy:

> **§ 10231.102.  Declaration of policy**
>
> The General Assembly finds and declares as follows:
>
> (1)  Scientific evidence **suggests** that medical marijuana is one **potential therapy** that may mitigate suffering in some patients and also enhance quality of life.
>
> (2)  The Commonwealth is committed to patient safety. Carefully regulating the program which allows access to medical marijuana will enhance patient safety while research into its effectiveness continues.

---

[5] This Section of the CSA has undergone several revisions, which do not change the relevant language of the statute or apply to the present case.

(3)    It is the intent of the General Assembly to:

(i)    Provide a program of access to medical marijuana which balances the need of patients to have access to the latest treatments with the need to promote patient safety.

(ii)    Provide a safe and effective method of delivery of medical marijuana to patients.

(iii) Promote high quality research into the effectiveness and utility of medical marijuana.

(4)    It is the further intention of the General Assembly that any Commonwealth-based program to provide access to medical marijuana serve as a **temporary** measure, pending Federal approval of and access to medical marijuana through traditional medical and pharmaceutical avenues.

35 P.S. § 10231.102(1)-(4) (emphasis added).  In essence, the MMA creates a **temporary** program for qualified persons to access medical marijuana, for the safe and effective delivery of medical marijuana, and for research into the effectiveness and utility of medical marijuana.  *Id.*; 35 P.S. § 10231.301.  Significantly, the MMA does not declare that marijuana is safe and effective for medical use; instead, the MMA is a temporary vehicle to access the substance pending research into its medical efficacy and utility.  35 P.S. § 10231.102(1)-(4).

Section 10231.303 of the MMA allows for the limited lawful use of medical marijuana, and pertinent to this case, Section 10231.304 emphasizes the unlawful use of medical marijuana:

**§ 10231.304.  Unlawful use of medical marijuana**

**(a)  General rule.**—Except as provided in section 303, section 704, Chapter 19 or Chapter 20,[1] the use of medical marijuana is unlawful and shall, in addition to any other penalty provided by law, be deemed a violation of the [CSA].[2]

**(b)  Unlawful use described.**—It is unlawful to:

(1)  Smoke medical marijuana.

(2)  Except as provided under subsection (c), incorporate medical marijuana into edible form.

(3)  Grow medical marijuana unless the grower/processor has received a permit from the department under this act.

(4)  Grow or dispense medical marijuana unless authorized as a healthy medical marijuana organization under Chapter 19.

(5)  Dispense medical marijuana unless the dispensary has received a permit from the department under this act.

**(c)  Edible medical marijuana.**—Nothing in this act shall be construed to preclude the incorporation of medical marijuana into edible form by a patient or a caregiver in order to aid ingestion of the medical marijuana by the patient.

[1] 35 P.S. §§ 10231.303, 10231.704, 10231.1901 *et seq.*, 10231.2001 *et seq.*

[2] 35 P.S. 780.101 *et seq.*

35 P.S. § 10231.304.  Further, the MMA states: "The growth, processing, distribution, possession and consumption of medical marijuana permitted under [the MMA] shall not be deemed a violation of the [CSA]" and "[i]f a provision of the [CSA] relating to marijuana conflicts with a provision of [the

MMA], [the MMA] shall take precedence." 35 P.S. § 10231.2101. In other words, compliance with the MMA will not constitute a crime under the CSA. *Id.*

"The essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly." ***Commonwealth v. Bullock***, 868 A.2d 516, 524 (Pa.Super. 2005), *affirmed*, 590 Pa. 480, 913 A.2d 207 (2006), *cert. denied*, 550 U.S. 941, 127 S.Ct. 2262, 167 L.Ed.2d 1103 (2007).

> However, the principle does not absolutely prohibit the Commonwealth from classifying individuals for the purpose of receiving different treatment, …and does not require equal treatment of people having different needs. Indeed, the Commonwealth may create legislative classifications so long as the classifications rest upon some ground of difference which justifies the classification and [have] a fair and substantial relationship to the object of the legislation.

*Id.* (internal citations and quotation marks omitted). Thus, the Equal Protection Clause does not confer uniform protection to all persons under any circumstances or "obligate the government to treat all persons identically." ***Commonwealth v. Shawver***, 18 A.3d 1190, 1194 (Pa.Super. 2011).

> Equal protection analysis recognizes three types of governmental classification, each of which calls for a different standard of scrutiny. The appropriate standard…is determined by examining the nature of the classification and the rights thereby affected. In the first type of case, where the classification relates to who may exercise a fundamental right or is based on a suspect trait such as race or national origin, strict scrutiny is required. When strict scrutiny is employed, a classification will be invalid unless it is found to be necessary to the achievement of a compelling state interest.

> The second type of case involves a classification which, although not suspect, is either sensitive or important but not fundamental. Such a classification must serve an important governmental interest and be substantially related to the achievement of that objective.
>
> The third type of situation involves classifications which are neither suspect nor sensitive or rights which are neither fundamental nor important. Such classifications will be valid as long as they are rationally related to a legitimate governmental interest.

*Id.* (quoting *Commonwealth v. Bell*, 512 Pa. 334, 344–45, 516 A.2d 1172, 1177–78 (1986)).

Courts generally consider constitutional challenges involving criminal statutes, which create different groups of offenders or various sentencing categories going to the duration of confinement, as type-three classifications. *Shawver, supra*. A particular criminal statute will be deemed consistent with the Equal Protection Clause if the statute is rationally related to a legitimate government interest. *Small v. Horn*, 554 Pa. 600, 615, 722 A.2d 664, 672 (1998). "[U]nder the rational basis test, if any state of facts can be envisioned to sustain the classification, equal protection is satisfied." *Commonwealth v. Albert*, 563 Pa. 133, 141, 758 A.2d 1149, 1153 (2000). "Moreover, courts are free to hypothesize reasons why the legislature created the particular classification at issue and if some reason for it exists, it cannot be struck down, even if the soundness or wisdom in creating the distinction is questioned." *Id.*

Prior to the enactment of the MMA, this Court considered a related challenge to CSA and its Schedule I classification of marijuana. *See*

***Commonwealth v. Waddell***, 61 A.3d 198 (Pa.Super. 2012).  The ***Waddell***

Court rejected the argument that marijuana no longer qualified as a Schedule

I substance because of its demonstrated medicinal value, stating:

> Appellant's interpretation would require that each of the Schedule I substances listed under 35 P.S. § 780–104(1) continuously meet the conditions that there be "a high potential for abuse, no currently accepted medical use in the United States, and a lack of accepted safety for use under medical supervision." [35 P.S. § 780–104].  Apart from the fact that it is not a rational reading of the plain text, that interpretation is perceptibly untenable with respect to many of the substances listed under the statute.  For instance, heroin,[18] listed as a Schedule I substance under 35 P.S. § 780–104(1)(ii)(10), is incredibly effective in the treatment of severe pain associated with heart attacks, severe physical injury, and certain terminal illnesses.[19]  This is true of many of the opiates and opiate derivatives also listed under 35 P.S. § 780–104(1)(i) and (ii) as Schedule I substances.  The inclusion of heroin as a Schedule I substance under Federal Law is the reason it lacks an accepted medical use in the United States.[20]
>
> > [18] "Heroin" is a term used for "diacetylmorphine" when that substance is used as a street drug.
> >
> > [19] [omitted]
> >
> > [20] Ultimately, our Commonwealth may criminalize the possession, manufacture, and distribution of marijuana and other intoxicating substances, independent of their medical utility, as a function of the police power, and the reasonableness of such measures is largely at the discretion of the legislature.  However, the police power is not unlimited. ***See Commonwealth v. Bonadio***, 490 Pa. 91, 415 A.2d 47, 49 (1980).  Apart from such limitations, however, it is primarily for the citizens of Pennsylvania to decide, through their elected representatives, if the moral prerogatives of the citizenry justify the staggering social and economic costs of enforcing the prohibition on the medical and recreational use of marijuana.

*Id.* at 206-207. The **Waddell** Court upheld the constitutionality of the Schedule I classification of marijuana, stating: "Regardless of whether there are accepted medical uses for marijuana in the United States, marijuana remains a Schedule I substance under the [CSA]." *Id.* at 207.

Instantly, after receiving information from a CI and a legitimate trash pull, police obtained a search warrant and conducted a search of Appellant's residence on May 16, 2014, where police found a marijuana grow of roughly 40 plants. The Commonwealth charged Appellant with PWID and related offenses under the CSA.

The MMA became effective on May 17, 2016. Appellant filed a pretrial motion on October 11, 2016, challenging the constitutionality of the Schedule I classification of marijuana under the CSA. The court held a hearing on April 18, 2017, and denied Appellant's pre-trial motion. Following a stipulated bench trial on June 8, 2017, the court convicted Appellant of two counts of PWID, and one count each of possession of marijuana and possession of drug paraphernalia and sentenced him that day to an aggregate term of two years' probation.

Here, Appellant calls upon us to abrogate the Schedule I classification of marijuana under the CSA, in light of the passage of the MMA, based on an equal protection argument. Initially, Appellant's statutory "irreconcilable differences" argument lacks merit, where the MMA simply establishes a scheme for the lawful use of medical marijuana. **See** 35 P.S. §§

- 14 -

10231.102(3), 10231.102(1) (stating scientific evidence suggests medical marijuana is one potential therapy that may have therapeutic benefits). The usage of language like "suggests," "potential," and "may" does not conclusively demonstrate the General Assembly found marijuana to have accepted medical use other than for its palliative or analgesic effects. Rather, the statutory language illustrates the General Assembly's intent to create legal avenues for research into the use of medical marijuana while providing pathways to potential relief for certain categories of patients. ***See id.***

Furthermore, the temporary nature of the MMA serves as an acknowledgement of the General Assembly that more research into the medical value of marijuana is necessary. ***See*** 35 P.S. § 10231.102(4). The MMA established a medical marijuana program to serve as a stopgap measure, "pending Federal approval of and access to medical marijuana through traditional medical and pharmaceutical avenues." ***See id.*** The plain text of the MMA acknowledges the potential therapeutic value of medical marijuana, but it does not declare that marijuana has accepted medical use. ***See*** 35 P.S. § 10231.102(1), (3); ***Waddell, supra***. Instead, the MMA intends to be "a **temporary** measure, pending Federal approval of and access to medical marijuana through traditional medical and pharmaceutical avenues." ***See*** 35 P.S. § 10231.102(4). Therefore, the MMA and the CSA Schedule I classification of marijuana do not conflict on the ground of "currently accepted medical use." Instead, the General Assembly allows for the use of medical

marijuana under very specific guidelines which, when followed, will not lead to criminal punishment. *See* 35 P.S. § 10231.2101. Appellant did not meet any criteria under the MMA to merit its protection directly or indirectly. In short, the MMA is not relevant to Appellant's case in any form.

Regarding Appellant's equal protection challenge, we first observe that medical marijuana is not listed in the CSA as a Schedule I substance, only marijuana is listed. The MMA provides a very limited and controlled vehicle for the legal use of medical marijuana by persons qualified under the MMA. *See* 35 P.S. § 10231.102(3). Outside the MMA, marijuana remains a prohibited Schedule I controlled substance for the general citizenry who are unqualified under the MMA. *See* 35 P.S. § 10231.304.

The CSA is social legislation that falls within the purview of the General Assembly. *See Shawver, supra.* The CSA furthers the legitimate government interest of public safety by protecting the public from unfettered access to unsafe substances. As a public safety statute, the CSA is rationally related to the governmental objective of public protection. *See id.* Further, we reject Appellant's bare and misleading observation that the CSA is arbitrary or capricious legislation, based on racial animus or bias. To the contrary, a genuine public safety purpose existed when the General Assembly passed the CSA, and Appellant failed to prove the Schedule I classification of marijuana is no longer rationally related to that legitimate government interest. *See Albert, supra.* Therefore, the continued classification of marijuana as a

Schedule I substance under the CSA does not violate the equal protection clause as claimed. **See id.** Thus, we refuse to use the power of judicial review to undercut the legislative collective wisdom on public policy in this regard. **See Yasipour, supra**.

Based upon the foregoing, we hold that the CSA and the MMA can be read in harmony and given full effect, where the MMA was not intended to remove marijuana from the list of Schedule I substances under the CSA; the MMA was intended to provide a controlled program for lawful access to medical marijuana under specific circumstances and criteria for special medical needs. Further, we hold Appellant waived his substantive due process claim for failure to develop it before the trial court or on appeal. We also hold the CSA Schedule I classification of marijuana does not violate equal protection on the ground that it treats similarly situated citizens disparately. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/26/2019

- 17 -