J-A28009-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEPHEN GARY MURRAY | : | |
| | : | |
| Appellant | : | No. 316 WDA 2020 |

Appeal from the Judgment of Sentence Entered February 21, 2020
In the Court of Common Pleas of Greene County Criminal Division at
No(s):  CP-30-CR-0000012-2019

BEFORE:  OLSON, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY OLSON, J.:                    FILED DECEMBER 31, 2020

Appellant, Stephen Gary Murray, appeals from the judgment of sentence entered on February 21, 2020, following his bench trial convictions for driving under the influence (DUI) of a controlled substance and possession of a small amount of marijuana.[1]  We affirm.

In an order entered on December 20, 2019, the trial court set forth the facts of this case as follows:

> [On July 27, 2018, Appellant] was paid [to drive] a passenger in his Kia Soul vehicle from the Pittsburgh area to [the State Correctional Institution in Greene County (S.C.I. Greene)]. The purpose of the transport was to permit [Appellant's] passenger to visit with a friend or loved one incarcerated at S.C.I. Greene[. ...Appellant] is approved by the State Department of Transportation to transport people for [prison] visitation[.]
>
> [Sergeant Joseph Burger], who is employed by the Pennsylvania Department of Corrections as a K9 Officer[,] was on a specialized

_____

[1]  75 Pa.C.S.A. §3802(d)(1)(i) and 35 P.S. §780-113(a)(31)(i).

detail on that day and was conducting a checkpoint with the purpose of eradicating or slowing the flow of drugs, weapons, and other contraband into the State Correctional Institute. [Appellant's] car was searched. Ultimately, a small amount of marijuana was found in [Appellant's] pocket[.] The []marijuana was procured from an [unlicensed] source and [Appellant admitted he] purchased that marijuana at a [Kentucky Fried Chicken (KFC)] restaurant located near the State Prison[,] from [an unlicensed source, and that he smoked the marijuana before driving to SCI Greene].

[Appellant] has a medical marijuana identification card [which was] admitted [in]to the record [at trial]. The [] medical marijuana identification card permitted [Appellant] to use marijuana under certain conditions and [] it was effective [] on July 27, 2018.

As a result of [Appellant's] possession of marijuana and [subsequent performance on] field sobriety tests, [the Commonwealth] charged [Appellant] with [possession of a small amount of marijuana and] two separate counts of DUI[, the aforementioned charge under Section 3802(d)(1)(i) (operating a motor vehicle with a Schedule I controlled substance present in an individual's blood) ("DUI – controlled substance"), as well as, driving under the influence of a drug or combination of drugs to a degree which impairs an individual's ability to safely operate a motor vehicle, pursuant to 75 Pa.C.S.A. § 3802(d)(2)[2] ("DUI – general impairment/drugs")].

_____

[2] Section 3802(d) provides, in pertinent part:

(d) Controlled substances.--An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

(1) There is in the individual's blood any amount of a:

(i)    Schedule I controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act;

* * *

Trial Court Order, 12/20/2019, at *1-3 (unpaginated).

The trial court held a bench trial on December 18, 2019 and heard testimony from Sergeant Burger, Appellant, and the arresting officer, Kevin B. Kulka. The Commonwealth also presented the testimony of two forensic scientists who opined that Appellant's blood test revealed the presence of tetrahydrocannabinol (THC), an active element of marijuana, in Appellant's bloodstream that would have rendered Appellant impaired at the time of the incident.

In an order, entered on December 20, 2019, the trial court made the aforementioned factual findings, but reserved judgment regarding the offense of DUI - controlled substance under Section 3802(d)(1)(i) pending additional argument on an issue raised by Appellant. Appellant ultimately argued that, pursuant to Section 3802(d)(1)(i), the Commonwealth needed to prove that Appellant had a Schedule I controlled substance in his bloodstream to support a conviction for DUI – controlled substance. While marijuana is listed as a

_____

(2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(d)(1)(i) and (2).

Moreover, we note that the Commonwealth also charged Appellant with possession of narcotics paraphernalia and careless driving. 35 P.S. §780-113(a)(32) and 75 Pa.C.S.A. §3714(a). However, the Commonwealth later nolle prossed those charges and they are not the subject of this appeal.

Schedule I controlled substance for "a high potential for abuse, no currently accepted medical use in the United States, and a lack of accepted safety for use under medical supervision[,[3]]" Appellant argued that the Medical Marijuana Act (MMA)[4] essentially removed marijuana from the Schedule I controlled substance list. Appellant argued that because he was authorized under the MMA to procure and use medical marijuana at the time of the traffic stop, he could not be convicted of DUI – controlled substance pursuant to Section 3802(d)(1)(i) because he could not be found to have had a Schedule I controlled substance in his bloodstream.

_____

[3] 35 P.S. § 780-104(1)(iv) (schedule of controlled substances).

[4] Effective May 17, 2016, our legislature established the MMA, "[a] medical marijuana program for patients suffering from serious medical condition[s.]" 35 Pa.S.C.A. § 10231.301. "Medical marijuana" is defined as "marijuana for certified medical use." Id. "Certified medical use" is defined as "the acquisition, possession, use or transportation of medical marijuana by a patient, or the acquisition, possession, delivery, transportation or administration of medical marijuana by a caregiver, for use as part of the treatment of the patient's serious medical condition, as authorized in a certification under this act, including enabling the patient to tolerate treatment for the serious medical condition." Id. Medical marijuana is sold by a "dispensary" or "[a] person, including a natural person, corporation, partnership, association, trust or other entity, or any combination thereof, which holds a permit issued by the department to dispense medical marijuana." Id. The MMA further states that "[t]he growth, processing, distribution, possession and consumption of medical marijuana permitted under [the MMA] shall not be deemed a violation of the Controlled Substances" Act and "[i]f a provision of the Controlled Substances [] Act relating to marijuana conflicts with a provision of [the MMA], [the MMA] shall take precedence." 35 P.S. § 10231.2101.

By order entered on January 27, 2020, the trial court found Appellant guilty of DUI - controlled substance and possession of a small amount of marijuana and deferred sentencing.[5] On February 21, 2020, the trial court sentenced Appellant to five days of house arrest followed by six months of probation, plus fines. This timely appeal resulted.[6]

On appeal, Appellant presents the following issue for our review:

> Whether the trial court committed an error of law in determining that 35 P.S. § 10231.2101 of the Medical Marijuana Act did not remove medical marijuana consumed by an individual pursuant to a valid Medical Marijuana Identification Card from the definition of a Schedule I Controlled Substance as defined by The Controlled Substance, Drug, Device and Cosmetic Act, 35 Pa.C.S.A. §780-101 and therefore removing it from the list of substances prohibited from being in a driver's blood in any amount by 75 [Pa.C.S.A.] § 3802(d)(1)(i) of the DUI [s]tatute?

Appellant's Brief at 4.

In support of his appeal, Appellant makes the following arguments. "Appellant submits that passage of the [MMA] removed medical marijuana from classification as a Schedule I controlled substance[,] thus removing it from the list of controlled substances prohibited from being in a driver's blood in any amount while operating a motor vehicle." Id. at 8. Appellant claims

_____

[5] The trial court found Appellant not guilty of DUI (general impairment) under Section 3802(d)(2).

[6] Appellant filed a notice of appeal, and corresponding concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), on February 27, 2020. On April 27, 2020, the trial court filed a statement pursuant to Pa.R.A.P. 1925(a), largely relying upon the rationale set forth in its previous orders with some minor "additions to the record[.]" Rule 1925(a) Statement, 4/27/2020, at 1.

that "[i]t is clear from the language of the MMA that the legislature intended to create a legal distinction between marijuana and medical marijuana and to provide the latter with a distinct legal status, exemptions, and its users with [protection from prosecution for conduct that would otherwise be subject to criminal sanction]." Id. at 14. As such, Appellant argues that his DUI conviction cannot stand. In the alternative, citing our Court's decision in Commonwealth v. Jezzi, 208 A.3d 1105 (Pa. Super. 2019), Appellant argues that the case should be remanded for the trial court to make "a finding as to whether the substance in the Appellant's blood was from medical marijuana or not." Id. at 8.

Because Appellant's claim is that the MMA preempts a prosecution for DUI – controlled substance in the instant case, our standard of review is as follows:

> The proper interpretation of a statute raises a question of law, over which our standard of review is de novo and our scope of review is plenary.
>
> When interpreting a statute, we look to ascertain and effectuate the intention of the General Assembly. Additionally, we must give effect to all of the laws['] provision[s] and are not to render language superfluous or assume language to be mere surplusage. If the text of the statute is clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.
>
> Moreover, where there is a conflict in the terms of a statute, 1 Pa.C.S.A. § 1933 provides the following guidance:
>
>> Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is

> irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

Commonwealth v. Bundy, 96 A.3d 390, 395 (Pa. Super. 2014) (internal case citations and quotations omitted).

In Commonwealth v. Jezzi, 208 A.3d 1105 (Pa. Super. 2019), this Court confronted the interplay between the MMA and the Controlled Substances Act. Therein, Jezzi was charged with various narcotics charges including, inter alia, two counts of possession with intent to deliver marijuana in connection with "a cannabis grow [operation] with approximately 40 [marijuana] plants." Jezzi, 208 A.3d at 1108. Jezzi argued that the MMA and Controlled Substances Act conflicted, that marijuana had been removed from the Schedule I controlled substances list, and he was entitled to equal protection under the law. Our Court ultimately concluded:

> [Jezzi] calls upon us to abrogate the Schedule I classification of marijuana under the [Controlled Substances Act], in light of the passage of the MMA, based on an equal protection argument. Initially, [Jezzi's] statutory "irreconcilable differences" argument lacks merit, where the MMA simply establishes a scheme for the lawful use of medical marijuana. See 35 P.S. §§ 10231.102(3), 10231.102(1) (stating scientific evidence suggests medical marijuana is one potential therapy that may have therapeutic benefits). The usage of language like "suggests," "potential," and "may" does not conclusively demonstrate the General Assembly found marijuana to have accepted medical use other than for its palliative or analgesic effects. Rather, the statutory language illustrates the General Assembly's intent to create legal avenues for research into the use of medical marijuana while providing pathways to potential relief for certain categories of patients. See id.

- 7 -

> Furthermore, the temporary nature of the MMA serves as an acknowledgement of the General Assembly that more research into the medical value of marijuana is necessary. See 35 P.S. § 10231.102(4). The MMA established a medical marijuana program to serve as a stopgap measure, "pending Federal approval of and access to medical marijuana through traditional medical and pharmaceutical avenues." See id. The plain text of the MMA acknowledges the potential therapeutic value of medical marijuana, but it does not declare that marijuana has accepted medical use. See 35 P.S. § 10231.102(1),(3). Instead, the MMA intends to be "a temporary measure, pending Federal approval of and access to medical marijuana through traditional medical and pharmaceutical avenues." See 35 P.S. § 10231.102(4). Therefore, the MMA and the [Controlled Substances Act] Schedule I classification of marijuana do not conflict on the ground of "currently accepted medical use." Instead, the General Assembly allows for the use of medical marijuana under very specific guidelines which, when followed, will not lead to criminal punishment. See 35 P.S. § 10231.2101. [Jezzi] did not meet any criteria under the MMA to merit its protection directly or indirectly. In short, the MMA is not relevant to [Jezzi's] case in any form.

> Regarding [Jezzi's] equal protection challenge, we first observe[d] that medical marijuana is not listed in the [Controlled Substances Act] as a Schedule I substance, only marijuana is listed. The MMA provides a very limited and controlled vehicle for the legal use of medical marijuana by persons qualified under the MMA. See 35 P.S. § 10231.102(3). Outside the MMA, marijuana remains a prohibited Schedule I controlled substance for the general citizenry who are unqualified under the MMA. See 35 P.S. § 10231.304.

Jezzi, 208 A.3d at 1114–1115 (case citations omitted; emphasis added).

In this case, the trial court determined that despite having a valid medical marijuana identification card, "the marijuana [found on Appellant] was procured from an illegal source and that [Appellant] purchased that marijuana at a KFC restaurant located near the state prison and from [an unlicensed] dispenser." Trial Court Order, 12/20/2019, at *2 (unpaginated). Appellant has not challenged that factual determination, and upon our review,

- 8 -

the record supports the trial court's conclusion. Here, Officer Kulka testified that "while [waiting] at [Appellant's preliminary] hearing, [Appellant, without provocation,] related [] that he obtained the marijuana he had on the date of the incident from a random individual at KFC in Waynesburg." N.T., 12/18/2019, at 54. Thereafter, at trial, Appellant admitted under oath that he had procured the marijuana at issue at a KFC restaurant. Id. at 72. Moreover, at the time of the incident, Appellant admitted to Officer Kulka that he had smoked some of the marijuana found on his person earlier that morning. Id. at 53.

Initially, we agree with Appellant that "there is a legal distinction between marijuana and medical marijuana." As set forth above, our legislature allows for the limited use of medical marijuana under very specific guidelines which, when followed, will not lead to criminal punishment. Appellant, however, did not follow those guidelines. By his own admission, Appellant did not legally procure medical marijuana at an official dispensary despite having an authorized medical marijuana identification card to do so. Furthermore, having an authorized medical marijuana identification card did not give Appellant carte blanche to procure marijuana illegally from a random person on the street. Additionally, Appellant also admitted to using the marijuana illegally obtained from the KFC restaurant prior to driving. In this matter, medical marijuana is simply not at issue and no additional fact-finding is warranted. Put simply, there was ample evidence introduced at trial to prove beyond a reasonable doubt that Appellant operated a motor vehicle with

marijuana in his bloodstream, in violation of Section 3802(d)(1)(i). Accordingly, we conclude that the trial court did not err in determining the MMA inapplicable and Appellant's sole appellate issue lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/31/2020