J-S41005-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                        :          PENNSYLVANIA
                                          :
              v.                        :
                                          :
                                          :
MARVIN SABIR                          :
                                          :
              Appellant         :      No. 442 EDA 2024

Appeal from the Judgment of Sentence Entered October 4, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002695-2023

BEFORE:  MURRAY, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY MURRAY, J.:          **FILED NOVEMBER 26, 2024**

Marvin Sabir (Appellant) appeals from the judgment of sentence imposed following his nonjury convictions of possession with intent to deliver a controlled substance (PWID), possession of a controlled substance, possession of drug paraphernalia, persons not to possess firearms, and possession of an instrument of crime (PIC).[1]  We affirm.

In its opinion, the trial court summarized the relevant factual history:

> Police Officer Robert Vazquez (hereinafter "PO Vazquez") testified to the following at the evidentiary hearing on Appellant's [pretrial] suppression motion: on February 14, 2023, at 6:40 p.m., he and his partner, Police Officer Joshua Rubin (hereinafter "PO Rubin")[,] were patrolling a high crime area of 1400 South Allison Street [in the city of Philadelphia] when he saw a running car with no plates or tags parked in an abandoned lot.  [] PO Vazquez approached the vehicle on foot and observed Appellant behind the wheel as the sole occupant.  Appellant turned on the

_____

[1] 35 P.S. § 780-113(a)(16), (30), (32); 18 Pa.C.S.A. §§ 6105(a)(1), 907.

dome lights and made direct eye contact with [PO Vazquez] before placing an unknown object under the driver's seat. PO Vazquez asked [Appellant] what he placed under his seat, and Appellant responded, "just weed." PO Vazquez inquired if there were any firearms in the vehicle, to which Appellant responded, "No." Then Appellant spontaneously handed over marijuana that was located on the passenger side of the vehicle.

Appellant complied with PO Vazquez's request to exit the vehicle and was placed in handcuffs. PO Vazquez and PO Rub[i]n searched Appellant, finding additional marijuana, 6 unused packets, and a black scale. PO Vazquez observed a third bag of marijuana protruding beneath the driver's seat. As [PO Vazquez] went to retrieve the contraband, a black firearm was discovered behind the drugs. PO Vazquez alerted PO Rub[i]n to the gun using the code signal "it's going to rain," but left the weapon in the vehicle.

PO Vazquez [determined Appellant did not have a valid license to carry a firearm.] PO Vazquez also checked the VIN [(vehicle identification number)] of the vehicle, which yielded no registration, title, or insurance. Appellant repudiated ownership of the vehicle, stating, "that's not my car."

Trial Court Opinion, 5/8/24, at 3 (citations omitted).

On the same date, Detective Rosalind Jordan (Detective Jordan) applied for and obtained a search warrant for the vehicle. Pursuant to the search warrant, police seized a loaded semiautomatic handgun. The Commonwealth subsequently charged Appellant with the above-described offenses.[2]

On April 23, 2023, Appellant filed a motion to suppress the physical evidence recovered during the vehicle stop. He argued 1) police had neither probable cause nor a warrant to support his arrest, search, and seizure; 2)

_____

[2] The Commonwealth also charged Appellant with one count of firearms not to be carried without a license, 18 Pa.C.S.A. § 6106, which was *nolle prossed*.

police lacked reasonable suspicion or probable cause to seize evidence; and

3) Appellant did not consent to the search. The trial court heard testimony on

Appellant's suppression motion on August 10, 2023. The trial court denied

Appellant's suppression motion.

The case immediately proceeded to a bench trial that same day. The

parties agreed to incorporate the testimony presented during the suppression

hearing. The parties additionally stipulated that Commonwealth's Exhibits C-

4 (property receipt pertaining to paraphernalia and narcotics recovered from

Appellant's person) and C-5 (property receipt pertaining to narcotics

recovered from the vehicle) "are fair and accurate depictions of the property

receipts prepared as relates to this case." N.T., 8/10/23, at 55-56.

Further, the parties stipulated:

[Appellant] is ineligible to possess a firearm due to a disqualifying
offense under [Crimes Code] Section 6105[.] … [A]dditionally, …
there's a stipulation by and between counsel that if called, [a]
narcotics expert, Kevin Keys, would testify that, first, he is an
expert in the area of narcotics use, distribution and possession.
And he would testify, based on all of his training and experience,
which span[s] over 30 years with the Philadelphia Police
Department in narcotics, based upon the circumstances of this
case, he would testify that the narcotics in question … were
possessed with the intent to deliver.

And then, lastly, the Commonwealth and defense ha[ve]
stipulated that if called to testify, forensic scientist, Jency Skaria,
would testify that the narcotics in this case were tested by the lab
and found to be marijuana, a Schedule I substance. And that
would be specifically for her report, Commonwealth's Exhibit C-
11, which pertain[s] to two exhibits of two separate bags of 110
grams of marijuana and one bag of approximately 27 grams of
marijuana.

*Id.* at 56-57. At the close of the bench trial, the trial court found Appellant guilty of the above-mentioned offenses. The court deferred sentencing and ordered completion of a pre-sentence investigation report.

On October 4, 2023, the trial court sentenced Appellant to an aggregate 6 to 12 years in prison, with credit for time served. On October 10, 2023, Appellant timely filed a post-sentence motion challenging the denial of his suppression motion.

On January 26, 2024, before the trial court ruled on Appellant's post-sentence motion, Appellant filed a *pro se* notice of appeal.[3] Appellant's privately-retained trial counsel subsequently filed a motion to withdraw from representation, asserting that Appellant did not retain him for direct appeal.

By order filed February 12, 2024, the trial court denied Appellant's post-sentence motion by operation of law.[4] The court did not rule on trial counsel's motion to withdraw.

_____

[3] Generally, "no defendant has a constitutional right to hybrid representation, either at trial or on appeal." *Commonwealth v. Staton*, 184 A.3d 949, 957 (Pa. 2020) (citation omitted). Nevertheless, "when a counseled defendant files a *pro se* notice of appeal, the appeal is not a legal nullity[,] and has legal effect." *Commonwealth v. Hopkins*, 228 A.3d 577, 580-81 (Pa. Super. 2020) (citation omitted); *see also Commonwealth v. Williams*, 151 A.3d 621, 624 (Pa. Super. 2016) ("Because a notice of appeal protects a constitutional right, it is distinguishable from other filings that require counsel to provide legal knowledge and strategy in creating a motion, petition, or brief.").

[4] The 120th day after Appellant's October 10, 2023, post-sentence motion was February 7, 2024. Thus, the trial court did not render a decision on Appellant's

*(Footnote Continued Next Page)*

- 4 -

On February 12, 2024, trial counsel filed in this Court a motion to withdraw as counsel reiterating that Appellant did not retain him for appeal. This Court granted trial counsel's motion to withdraw and directed the trial court to determine Appellant's eligibility for court-appointed counsel. The trial court subsequently appointed Appellant counsel for direct appeal.

Appellant, through appellate counsel, filed a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal on April 2, 2024.[5] The trial court subsequently issued a Rule 1925(a) opinion.

On appeal, Appellant raises the following issue for review:

1. Whether the [trial] court erred and abused its discretion when it denied [Appellant's] motion to suppress physical evidence by order of August 10, 2023[,] since the Commonwealth failed to demonstrate the constitutional muster of the stop, arrest, and warrantless search of [Appellant] and the subsequent search of

_____

post-sentence motion within 120 days as required by Pa.R.Crim.P. 720(B)(3)(1) ("the judge shall decide the post-sentence motion … within 120 days of the filing of the motion. If the judge fails to decide the motion within 120 days, or to grant an extension as provided in paragraph (B)(3)(b), the motion shall be deemed denied by operation of law."). The trial court did not grant an extension pursuant to Rule 720(B)(3)(b). Accordingly, the clerk of courts was required to enter an order denying the post-sentence motion by operation of law on February 7, 2024. *See* Pa.R.Crim.P. 720(B)(3)(c) ("When a post-sentence motion is denied by operation of law, the clerk of courts shall enter forthwith an order on behalf of the court … that the post-sentence motion is deemed denied."). The late filing of the order denying Appellant's post-sentence motion by operation of law constitutes a breakdown in the court system. *See Commonwealth v. Perry*, 820 A.2d 734, 735 (Pa. Super. 2003). Moreover, though Appellant filed his *pro se* notice of appeal prior to the 120th day following the filing of his post-sentence motion, we deem the appeal timely filed.

[5] The trial court did not order Appellant to file a Rule 1925(b) concise statement.

- 5 -

the vehicle[ ]in[ ]question that violated the Fourth Amendment of the United States Constitution and Article I, Section Eight and Nine of the Pennsylvania Constitution, in violation of his rights against unreasonable searches and seizures?

> A. There was no reasonable suspicion nor probable cause to stop and detain [Appellant] and conduct a warrantless search of his person and property.
>
> B. [Appellant] did not consent to the search of his person or property.
>
> C. There was no probable cause nor exigent circumstances present to support the warrantless search and subsequent seizure in violation of *Commonwealth v. Alexander*, [243 A.3d 177] (Pa. 2020), reaffirming prior decisions that the Pennsylvania Constitution required both a showing of probable cause and exigent circumstances to justify a warrantless search of an automobile, neither of which existed relative to the search of the vehicle [] which [Appellant] occupied.

Appellant's Brief at 6 (footnote omitted).

Our standard of review is well settled:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Carey*, 249 A.3d 1217, 1223 (Pa. Super. 2021) (citation

omitted).

Appellant challenges the trial court's denial of his pre-trial motion to suppress physical evidence. In his statement of questions, Appellant identifies three separate arguments to support his claim. However, in the argument section of his brief, Appellant advances only two arguments, abandoning his assertion that he did not consent to the search. Any challenge to the search based on lack of consent is therefore waived. *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued…."); *see also Commonwealth v. Tchirkow*, 160 A.3d 798, 804 (Pa. Super. 2017) (stating that "[t]his Court will not act as counsel and will not develop arguments on behalf of an appellant." (citation and quotation marks omitted)). We address Appellant's two remaining arguments in turn.

First, Appellant argues he was subject to a custodial detention, which was not supported by probable cause. *See* Appellant's Brief at 12-16. Appellant claims the officers therefore conducted an illegal warrantless search of his person. *Id.* at 12. Further, Appellant contends the officers never ascertained whether he was licensed to possess marijuana under the Medical Marijuana Act (MMA), 35 P.S. §§ 10231.101-10231.2110.[6]

---

[6] The MMA "allows for the use of medical marijuana under very specific guidelines which, when followed, will not lead to criminal punishment." *Commonwealth v. Jezzi*, 208 A.3d 1105, 1114 (Pa. Super. 2019). Notably, Appellant makes no assertion that he is authorized to possess marijuana under the MMA. Moreover, Appellant did not raise an argument relating to the applicability of the MMA at any time before the trial court; this portion of his argument is therefore waived. Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

The Commonwealth counters that the interaction began as a mere encounter when PO Vazquez walked toward Appellant. Commonwealth Brief at 7. The Commonwealth argues PO Vazquez developed reasonable suspicion to support an investigative detention based on 1) the vehicle's location in an abandoned lot, in a high crime area; 2) the vehicle's lack of a license plate despite the fact that it was running; and 3) Appellant's act of furtively placing an item under his seat after making eye contact with PO Vazquez. *Id.* After Appellant informed PO Vazquez that the item was marijuana, the Commonwealth asserts PO Vazquez had probable cause to arrest Appellant. *Id.* at 8.

"The Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee individuals freedom from unreasonable searches and seizures." *Commonwealth v. Singletary*, 267 A.3d 1267, 1274 (Pa. Super. 2021). Our courts have consistently identified varying categories of police interaction:

> To secure the right of citizens to be free from unreasonable search and seizure, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty. For this purpose, courts in Pennsylvania have defined three types of police interactions: a mere encounter, an investigative detention, and a custodial detention. A mere encounter is characterized by limited police presence, and police conduct and questions that are not suggestive of coercion. Such encounters do not obligate the citizen to stop or respond and, consequently, need not be supported by any level of suspicion. Thus, the hallmark of a mere encounter is that the subject is free to decline to interact with the police or to answer questions, and is also free to leave at any time.

> If, however, a police presence becomes too intrusive, the interaction must be deemed an investigative detention or seizure. An investigative detention, by implication, carries an official compulsion to stop and respond. [Where an] interaction has elements of official compulsion[,] it must be supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity and may continue only so long as is necessary to confirm or dispel such suspicion. Finally, an arrest or custodial detention must be supported by probable cause to believe the person is engaged in criminal activity.

*Commonwealth v. Hampton*, 204 A.3d 452, 456-57 (Pa. Super. 2019) (citations omitted).

Instantly, the trial court concluded the officers had reasonable suspicion to stop Appellant based on his Vehicle Code violation. Trial Court Opinion, 5/8/24, at 5-6. Further, the trial court concluded the search of Appellant's person was a lawful search incident to arrest. *Id.* at 6-8.

A vehicle stop constitutes a "seizure" under the Fourth Amendment. *See Commonwealth v. Ruffin*, 282 A.3d 796, 800 (Pa. Super. 2022). Generally, a police officer may stop a vehicle based on reasonable suspicion that a violation of the Vehicle Code "is occurring or has occurred." 75 Pa.C.S.A. § 6308(b). However, "in circumstances where the violation is such that it requires no additional investigation, the officer must possess probable cause before initiating the traffic stop." *Ruffin*, 282 A.3d at 800.

During the suppression hearing, PO Vazquez testified he was on duty on February 14, 2023. N.T., 8/10/23, at 10. At approximately 6:40 p.m., while he was on regular patrol, PO Vazquez observed a vehicle parked in an empty

- 9 -

lot. *Id.* at 11-12. PO Vazquez stated the vehicle was running and the taillights were on, but the vehicle did not have a license plate. *Id.* PO Vazquez parked his police cruiser and approached the vehicle. *Id.* at 12-13.

The evidence adduced at the suppression hearing confirms PO Vazquez first approached the vehicle because it did not have a license plate. *See* N.T., 8/10/23, at 11 (wherein PO Vazquez testified he "observed a vehicle that was turned on with no plates, at which point I issued an investigation."). Section 1332(a) of the Vehicle Code provides:

> Every registration plate shall, at all times, be securely fastened to the vehicle to which it is assigned or on which its use is authorized in accordance with regulations promulgated by the department.

75 Pa.C.S.A. § 1332(a). Further investigation would not have provided PO Vazquez with additional information concerning whether a violation of Section 1332(a) had occurred. Therefore, he was required to possess probable cause in order to stop Appellant.[7] *See generally Ruffin*, 282 A.3d at 800 (concluding a violation of Section 1332(b) (concerning obscured license plates) required no additional investigation, and therefore, officer was required to have probable cause). PO Vazquez's testimony indicates the vehicle's lack of license plate was immediately apparent. *See* N.T., 8/10/23,

_____

[7] While we disagree with the trial court's application of the less stringent reasonable suspicion standard, we note that we may affirm for any reason that is supported by the record. *See In re A.J.R.-H.*, 188 A.3d 1157, 1175-76 (Pa. 2018) ("The 'right for any reason' doctrine allows an appellate court to affirm the trial court's decision on any basis that is supported by the record.").

at 11. Thus, PO Vazquez had probable cause stop the vehicle for violation of Section 1332(a).

Then, according to PO Vazquez:

As I got closer, [Appellant] turned on the dome lights in the vehicle. At which point, when I got even closer, we eventually made eye contact, which is when I observed him place an unknown object underneath his car seat.

*Id.* at 13. PO Vazquez stated that Appellant was the only individual in the vehicle. *Id.*

PO Vazquez asked Appellant what he had placed beneath the seat, and Appellant replied, "just weed." *Id.* at 14. Appellant also handed PO Vazquez a bag of marijuana, which had been located in the passenger side of the vehicle. *See id.* at 23, 27. PO Vazquez testified the marijuana Appellant handed him was "in a quantity that is still considered illegal." *Id.* at 28; *see also* Commonwealth's Exhibit C-11 (lab report identifying two heat-sealed bags containing over 110 grams of marijuana, and a knotted plastic bag containing over 27 grams of marijuana). At that time, PO Vazquez asked Appellant to exit the vehicle. N.T., 8/10/23, at 14, 28-29.

When Appellant stepped out of the car, Officer Vazquez observed a bag of marijuana in plain view under the driver's seat. *Id.* at 14. When PO Vazquez retrieved the marijuana, he noticed a black firearm, which was also under the seat, and alerted Officer Rubin. *Id.* at 14-15. The officers did not retrieve the firearm, as Appellant was already detained. *Id.* at 15-16. The

officers searched Appellant after detaining him, at which time they recovered additional marijuana and drug paraphernalia. *Id.* at 16, 29.

Upon review, we conclude PO Vazquez had the requisite probable cause to stop Appellant based on a violation of Section 1332(a). During the course of the legal stop, PO Vazquez asked Appellant only a single question based on his observation of Appellant moving something within the vehicle. *See* N.T., 8/10/23, at 14. PO Vazquez did not improperly prolong the stop such that an independent basis was required to support the question. *See generally Rodriguez v. United States*, 575 U.S. 348, 254 (2015) (stating "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop … and attend to related safety concerns…."); *see also Commonwealth v. Ross*, 297 A.3d 787, 792 (Pa. Super. 2023) (explaining that tasks relating to officer safety are part of a traffic stop's mission, and concluding officer's inquiry of whether the appellant possessed a firearm did not unnecessarily prolong the ongoing stop).

Appellant voluntarily admitted to possessing marijuana and handed PO Vazquez a bag containing the substance. Appellant's voluntary admission provided probable cause for his arrest. *See Commonwealth v. Young*, 162 A.3d 524, 528 (Pa. Super. 2017) (concluding the defendant's admission to officers that he had marijuana gave police probable cause to arrest him for possession of a controlled substance). "The officers were also authorized to

search [Appellant] incident to that arrest....” *Id.* Based upon the foregoing, we conclude the marijuana and drug paraphernalia were recovered during a valid search incident to Appellant's arrest. Appellant's first claim merits no relief.

In his second claim, Appellant asserts the officers did not have probable cause to conduct a warrantless search of his vehicle. Appellant's Brief at 16. Appellant cites our Supreme Court's holding in *Alexander*, *supra*,[8] and argues the police did not establish both probable cause and exigent circumstances to support a warrantless search. *Id.* at 16-17. Additionally, Appellant claims the search warrant obtained by Detective Jordan does not cure the illegal seizure under the independent source doctrine. *Id.* at 17-18.

The Commonwealth counters Appellant lacked standing to challenge the vehicle search because he failed to establish a legitimate expectation of privacy in the vehicle. Commonwealth Brief at 10. The Commonwealth points out that **Appellant denied owning the vehicle**. *Id.*

_____

[8] In *Alexander*, our Supreme Court held:

> Article I, Section 8 [of the Pennsylvania Constitution] affords greater protection to our citizens than the Fourth Amendment, and … the Pennsylvania Constitution requires both a showing of probable cause and exigent circumstances to justify a warrantless search of an automobile.

*Alexander*, 243 A.3d at 181. Appellant's reliance on *Alexander* is misplaced because, as we discuss below, Appellant fails to meet the threshold requirement of establishing a privacy interest in the vehicle.

To prevail on a suppression claim, "the defendant, as a preliminary matter, must show that he had a privacy interest in the area searched." *Commonwealth v. Burton*, 973 A.2d 428, 434 (Pa. Super. 2009) (*en banc*) (citation omitted); *see also Commonwealth v. Enimpah*, 106 A.3d 695, 698 (Pa. 2014) (explaining that while a defendant charged with a possessory offense has automatic standing, the defendant still has the burden to establish a "privacy interest in the place invaded or thing seized").

> An expectation of privacy is present when the individual, by his conduct, exhibits an actual (subjective) expectation of privacy and that the subjective expectation is one that society is prepared to recognize as reasonable. The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances. Pennsylvania law makes clear there is no legally cognizable expectation of privacy in a stolen automobile. Additionally, this Court has declined to extend an expectation of privacy to an "abandoned" automobile.

*Burton*, 973 A.2d at 434 (citation and paragraph break omitted).

Here, the trial court concluded that Appellant failed to meet his burden of establishing his legitimate expectation of privacy in the vehicle. Trial Court Opinion, 5/8/24, at 9. We agree.

PO Vazquez testified the vehicle did not have a license plate, and Appellant did not produce proof of insurance for the vehicle. N.T., 8/10/23, at 11-12, 18. PO Vazquez's search using the VIN revealed the vehicle was not registered to any individual. *Id.* at 18, 19. No one else near the scene claimed ownership of the vehicle. *Id.* at 19. Additionally, it is undisputed

that when PO Rubin told Appellant that they found something in the vehicle, Appellant replied, "It's not my car." *See id.* at 49; *see also* Appellant's Brief at 10 (stating "Appellant repudiated ownership of the vehicle").[9]

In sum, the vehicle was not registered in Appellant's name, and Appellant offered no other evidence that he had permission to use the vehicle. Accordingly, the record supports the trial court's findings, and its conclusion that Appellant lacked a legitimate privacy interest in the vehicle is sound. *See Burton*, 973 A.2d at 436 (concluding the appellant did not establish an expectation of privacy in a vehicle where the appellant did not own the vehicle; failed to establish the registered owner granted him permission to use the vehicle; and offered no evidence to explain his connection to the registered owner of the vehicle); *see also Commonwealth v. Maldonado*, 14 A.3d 907, 911 (Pa. Super. 2011) (concluding the appellant did not establish a reasonable expectation of privacy in the vehicle at issue, which was registered

_____

[9] We note that Appellant's denial of ownership was presented to the trial court through a recording from one of the officers' body-worn cameras. *See* N.T., 8/10/23, at 49 (prosecutor referencing the statement, as shown in the body-worn camera footage); *see also id.* at 20-21 (wherein Commonwealth's Exhibit C-1 (recording from PO Vazquez's body-worn camera) was admitted into evidence), 24 (wherein Commonwealth's Exhibit C-2 (recording from PO Rubin's body-worn camera) was admitted into evidence). The recordings were not included with the certified record submitted to this Court. *See generally Commonwealth v. Bongiorno*, 905 A.2d 998, 1000 (Pa. Super. 2006) ("Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete…."). Nevertheless, the absence of these recordings does not hinder our review.

to the appellant's girlfriend, because he failed to provide evidence that his girlfriend authorized him to use her vehicle).  Appellant's second claim merits no relief.[10]

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/26/2024

_____

[10] The trial court also concluded the marijuana and firearm were admissible under the plain view exception to the warrant requirement.  **See** Trial Court Opinion, 5/8/24, at 8-10 (stating the marijuana was plainly visible following Appellant's removal from the vehicle, and the firearm was plainly visible once the officers retrieved the marijuana).  Given our conclusion on this issue, we need not fully address the applicability of the plain view exception.  However, we note briefly that Appellant's own statements alerted PO Vazquez that marijuana was located beneath the seat, and Appellant handed PO Vazquez another bag of marijuana from the passenger side of the vehicle.  PO Vazquez observed the firearm while retrieving the bag from beneath the seat.  **See** N.T., 8/10/23, at 14.  POs Vazquez and Rubin did not seize the firearm at that time, and instead, Detective Jordan secured a search warrant.