J-A27039-23

2024 PA Super 153

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                 :             PENNSYLVANIA
                                 :
           v.                        :
                                 :
                                 :
MICHAEL DAVID SMITH           :
                                 :
            Appellant            :    No. 593 MDA 2023

Appeal from the Judgment of Sentence Entered December 7, 2022
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0007244-2019

BEFORE:   LAZARUS, J., NICHOLS, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                 **FILED JULY 23, 2024**

Appellant, Michael David Smith, appeals from the judgment of sentence entered in the Court of Common Pleas of York County after a jury convicted him of, *inter alia*, driving under the influence ("DUI") in violation of 75 Pa.C.S.A. § 3802(d)(1)(i) and (iii). We affirm.

The undisputed facts are as follows: On the night of June 23, 2019, Pennsylvania State Police Troopers Ryan Wildermuth and Rebecca Taylor were on duty and riding in a marked patrol car when they entered Interstate 83 northbound and observed Appellant driving a dark colored SUV traveling north at a high rate of speed in the left lane. N.T., 7/11/22, at 12-18. Prior to executing a traffic stop, the troopers pursued the vehicle for over three tenths of a mile, during which they observed speeds of over 80 miles per hour in a

---

[*] Former Justice specially assigned to the Superior Court.

50 mile per hour zone and "choppy" handling of the vehicle around curves. N.T. at 19-21.

During Trooper Wildermuth's encounter with Appellant, he detected a strong odor of burnt marijuana emanating from inside the vehicle and viewed Appellant's heavy, glassy, bloodshot eyes." N.T. at 22. From the trooper's lawful vantage point outside the vehicle, he saw positioned on the center console, in plain view, a corn cob pipe and a small marijuana bud in the cup holder. N.T. at 28. Appellant produced a Medical Marijuana[1] card and admitted that he had smoked marijuana approximately 40 to 50 minutes earlier in Baltimore, Maryland. N.T. at 28. A medical marijuana container and THC[2] wax were also in the vehicle.[3] N.T. at 38. Appellant was placed under arrest on suspicion of Driving under the Influence ("DUI") and, after consenting to blood chemical testing, was taken to York Hospital where a blood sample

_____

[1] Appellant possessed the card in accordance with The Medical Marijuana Act, 35 P.S. § 10231.101 *et seq*.

[2] THC is the abbreviation for Tetrahydrocannabinol, an active ingredient in marijuana.

[3] During trial, the Commonwealth indicated that it was prosecuting the DUI charge without making the distinction of whether Appellant's consumption of marijuana was lawful or unlawful under the MMA. Instead, the prosecution was based strictly on the laboratory results of Appellant's post-arrest blood draw, which confirmed the presence of Delta-9-THC marijuana metabolites in his blood at the time of driving. In so doing, the prosecution's approach aligned with our jurisprudence that for purposes of the Section 3802(d)(1)(i) and (iii) of the DUI statutory scheme, it is irrelevant whether the source of the metabolites is lawfully consumed medical marijuana or unlawfully consumed marijuana. **See *Commonwealth v. Stone***, 273 A.3d 1163, 1172-74 (Pa. Super. 2022).

produced results indicating the presence of active marijuana metabolites in his blood. N.T. at 48.

A criminal complaint was filed charging Appellant with Driving under the Influence ("DUI") of a Schedule I[4] controlled substance, marijuana, in violation of Section 3802(d)(1)(i) and (iii) of the DUI statute.[5] Appellant filed omnibus

---

[4] The CSA describes five schedules of controlled substances. 35 P.S. § 780-104. In outlining the Schedule I substances, the Act states:

§ 780-104. **Schedules of controlled substances**

**(1) Schedule I**—In determining that a substance comes within this schedule, the secretary shall find: a high potential for abuse, no currently accepted medical use in the United States, and a lack of accepted safety for use under medical supervision. The following controlled substances are included in this schedule:

* * *

(iv) Marihuana.

35 P.S. § 780-104(1)(iv) (effective June 14, 1972).

[5] Section 3802(d)(1)(i), (ii), and (iii) provide:

**(d) Controlled substances.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

(1) There is in the individual's blood any amount of a:

(i) Schedule I controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64),[1] known as The Controlled Substance, Drug, Device and Cosmetic Act;

*(Footnote Continued Next Page)*

pretrial motions in which he raised constitutional challenges asserting that Sections 3802(d)(1)(i) and (iii) violate equal protection rights and due process rights provided to Appellant and other medical marijuana patients by the Pennsylvania Constitution. The trial court denied the motions.

At Appellant's trial, toxicologists and a physician provided expert testimony that marijuana and its metabolites travel from the blood to fat cells located primarily in the brain and the abdomen and can be released weeks later back into the blood stream, resulting in detectable levels of both active and inactive THC metabolites. N.T., 7/12/22, at 29, 73. Active metabolites bind to receptors and elicit an effect on the user, while an inactive metabolite has no effect. N.T. at 29; Report of Lawrence J. Guzzardi, M.D., 5/12/22, at 8-9. Medical Marijuana Act ("MMA") patients who regularly use marijuana in accordance with the MMA, moreover, will frequently have metabolites in their blood. N.T. at 73. The experts also agreed that, unlike with alcohol, there is no way to gauge accurately the impairment of a marijuana user by reference to a particular blood concentration level of THC or its metabolite. N.T. at 81-82, 98-99.

_____

> (ii) Schedule II or Schedule III controlled substance, as defined in The Controlled Substance, Drug, Device and Cosmetic Act, which has not been medically prescribed for the individual; or
>
> (iii) metabolite of a substance under subparagraph (i) or (ii).

75 Pa.C.S.A. § 3802(d)(1)(i)-(iii).

At the conclusion of trial, the jury found Appellant not guilty of DUI while impaired by a controlled substance (marijuana), 75 Pa.C.S.A. § 3802(d)(2), and not guilty of Driving on Roadways Laned for Traffic, 75 Pa.C.S. § 3309, but guilty of speeding and guilty of DUI related to marijuana and/or metabolites of marijuana being in his blood at the time of driving pursuant to Section 3802(d)(1)(i) and (iii).  On December 7, 2022, Appellant was sentenced to two concurrent sentences each consisting of three years' restrictive probation, beginning with 90 days' house arrest with electronic monitoring, and a mandatory $1,500 fine.  After the denial of post-sentence motions, Appellant filed the timely present appeal.

Appellant has briefed the following "Statement of the Questions Presented for Review":

1. Whether the Lower Court committed an error of law and/or abused its discretion when it denied Appellant's Motions to find that Sections 3802(d)(1)(i) and (iii) of the DUI statute are in violation of the equal protection and due process guarantees/rights provided to Appellant and other medical marijuana patient users under the Pennsylvania Constitution, since those Sections of the DUI statute;

   a) Violate equal protection rights by creating a classification based upon whether a person using a medication is either using a Schedule II/III prescribed/approved controlled substance or using medical marijuana, without a sufficient constitutional basis to justify that disparate treatment/classification which infringes upon and adversely affects fundamental constitutional rights (security/protection of one's reputation, an ability to enjoy life, and an ability to pursue happiness) expressly protected in the Pennsylvania Constitution;

b) Violate substantive due process rights and overbreadth protections because their criminalization of the presence of any amount of marijuana or any amount of its metabolites (active or inactive) in an individual's blood, without requiring proof of any impairment to drive (as is required with other approved medications), is arbitrary and capricious, uses unnecessarily broad means which punish lawful behavior and a mere status, results in unjust disparate treatment of patients approved to use medical marijuana to treat their medical conditions, bears little to no relation to keeping unsafe drivers off the roads by removing impaired drivers, and infringes upon and adversely affects fundamental constitutional rights (security /protection of one's reputation, an ability to enjoy life, and an ability to pursue happiness) expressly protected in the Pennsylvania Constitution; and,

c) Violate procedural due process rights by creating an irrebuttable presumption that patients approved to sue medical marijuana (unlike any other patient using prescribed/approved medications) are unable to drive safely and are guilty of a DUI offense simply based upon their having any amount of marijuana or its active or inactive metabolites in their blood, without any proof of being impaired to such a degree that they would be unsafe to drive, which infringes upon and adversely affects fundamental constitutional rights (security/protection of one's reputation, an ability to enjoy life, and an ability to pursue happiness) expressly protected in the Pennsylvania Constitution?

Brief of Appellant at 5.

Appellant's constitutional challenge is a question of law for which our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Torsilieri***, 232 A.3d 567 (Pa. 2020). "When addressing constitutional challenges to legislative enactments, we recognize that 'the General Assembly may enact laws which impinge on constitutional rights to protect the health, safety, and welfare of society,' but also that 'any restriction

is subject to judicial review to protect the constitutional rights of all citizens.'"

***Commonwealth v. Muhammad***, 241 A.3d 1149, 1154–55 (Pa. 2020)

(quoting ***In re J.B.***, 630 Pa. 408, 107 A.3d 1, 14 (2014)). Furthermore,

> It is axiomatic that: "[A]ny party challenging the constitutionality of a statute must meet a heavy burden, for we presume legislation to be constitutional absent a demonstration that the statute 'clearly, palpably, and plainly' violates the Constitution." ***Konidaris v. Portnoff Law Associates, Ltd.***, ... 598 Pa. 55, 953 A.2d 1231, 1239 ([Pa.] 2008) (citation omitted). The presumption that legislative enactments are constitutional is strong. ***Commonwealth v. McMullen***, ... 599 Pa. 435, 961 A.2d 842, 846 ([Pa.] 2008); ***see also*** 1 Pa.C.S. § 1922(3) ([stating that,] in ascertaining intent of General Assembly in enactment of statute, presumption exists that General Assembly did not intend to violate federal and state constitutions). All doubts are to be resolved in favor of finding that the legislative enactment passes constitutional muster. ***Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth***, ... 583 Pa. 275, 877 A.2d 383, 393 ([Pa.] 2005). Moreover, "statutes are to be construed whenever possible to uphold their constitutionality." ***In re William L.***, ... 477 Pa. 322, 383 A.2d 1228, 1231 ([Pa.] 1978).

> ***DePaul v. Commonwealth***, ... 600 Pa. 573, 969 A.2d 536, 545–46 ([Pa.] 2009).

***Commonwealth v. Arnold,*** 284 A.3d 1262, 1270 (Pa. Super. 2022)

> There are two types of constitutional challenges, facial and as-applied. ***Commonwealth v. Brown***, 26 A.3d 485, 493 (Pa. Super. 2011). A facial attack tests a law's constitutionality based on its text alone without considering the facts or circumstances of a particular case. ***Id***. The court does not look beyond the statute's explicit requirements or speculate about hypothetical or imaginary cases. ***Germantown Cab Company v. Philadelphia Parking Authority***, 651 Pa. 604, 206 A.3d 1030, 1041 (2019).

An as-applied attack on a statute is more limited. It does not contend that a law is unconstitutional as written, but that its application to a particular person under particular circumstances deprives that person of a constitutional right. *Brown*, 26 A.3d at 493. "[W]hile as-applied challenges require application of the ordinance to be ripe, facial challenges are different, and ripe upon mere enactment of the ordinance." *Philadelphia Entertainment & Development Partners v. City of Philadelphia*, 594 Pa. 468, 937 A.2d 385, 392 n. 7 (2007). It is permissible to raise both facial and as-applied challenges to a statute. *Id.* (addressing both facial and as-applied challenges to tax ordinance).

*Muhammad*, 241 A.3d at 1154–55.

Appellant contends Section 3802(d)(1)(i) and (iii)'s proscription against driving with "any amount" of a Schedule I substance or its metabolites in one's blood, regardless of evidence of impairment, unlawfully infringes on medical marijuana patients' ability to drive and the fundamental state constitutional rights of enjoying life and pursuing happiness they derive from driving. Also alleged is the inability of MMA patients to be secure in their reputations under a DUI statutory scheme that criminalizes unimpaired driving if the driver's blood contains any amount of marijuana or a marijuana metabolite. *See* Brief of Appellant at 23, *citing* *Nixon v. Commonwealth, Dep't of Public Welfare*, 839 A.2d 277, 286 (Pa. 2003) (recognizing Pennsylvania Constitution's Article I, Section 1[6] provision of fundamental rights, including

---

[6] Article I, Section 1 of the Pennsylvania Constitution, "§ 1. Inherent rights of mankind", provides, "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." PA CONST Art. 1, § 1.

the right to enjoy life and liberty, the pursuit of happiness, and the protection of one's reputation)

Appellant maintains that since he invokes fundamental rights, a most stringent, strict scrutiny level of judicial review of the DUI statute must be undertaken to determine whether the statute is narrowly tailored and necessary to achieve a compelling governmental interest with respect to such rights. The statute cannot withstand this scrutiny, Appellant continues, where it criminalizes the driving of MMA patients for having in their blood Schedule I controlled substances in the form of marijuana metabolites that have no potential to impair driving. In this regard, he points to the undisputed expert medical evidence admitted during his criminal trial explaining that inactive marijuana metabolites often remain in the blood of medical marijuana patients long after the impairing effects of marijuana use have ended. Thus, Appellant concludes, a compelling interest cannot be identified in a DUI statute that criminalizes a driver's status bearing no relation to driver safety.

This central argument underlies Appellant's three constitutional issues enumerated above in which he asserts that Section 3802(d)(1)(i) and (iii) violate, respectively, his equal protection rights, substantive due process rights, and procedural due process rights. Before we address each argument in turn, we determine the appropriate level of judicial scrutiny to apply.

> [T]he well-established rule [provides] that a law is presumed to be constitutional and may only be found to be unconstitutional if the party challenging the law can prove that it "clearly, palpably, and plainly" violates the Constitution. ***See***

*Consumer Party of Pa. v. Commonwealth*, 510 Pa. 158, 507 A.2d 323, 331–32 (1986) (*citing* ***Pennsylvania Liquor Control Bd. v. The Spa Athletic Club***, 506 Pa. 364, 485 A.2d 732, 735 (1984)); ***see also*** 1 Pa.C.S. § 1922(3). Furthermore, in determining the constitutionality of a law, this Court may not question the propriety of the public policies adopted by the General Assembly for the law, but rather is limited to examining the connection between those policies and the law. ***See Finucane v. Pennsylvania Milk Marketing Bd.,*** 136 Pa.Cmwlth. 272, 582 A.2d 1152, 1154 (1990); ***see also Parker v. Children's Hosp. of Phila.,*** 483 Pa. 106, 394 A.2d 932, 937 (1978) ("the power of judicial review must not be used as a means by which the courts might substitute [their] judgment as to the public policy for that of the legislature").

Article I, section 1 of the Pennsylvania Constitution provides: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Pa. Const. art. I, § 1. This section, like the due process clause in the Fourteenth Amendment of the United States Constitution, guarantees persons in this Commonwealth certain inalienable rights. ***See Gambone v. Commonwealth***, 375 Pa. 547, 101 A.2d 634, 636–37 (1954); ***see also Meyer v. Nebraska***, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). While the General Assembly may, under its police power, limit those rights by enacting laws to protect the public health, safety, and welfare, any such laws are subject to judicial review and a constitutional analysis. ***Gambone***, 101 A.2d at 636; ***Krenzelak v. Krenzelak***, 503 Pa. 373, 469 A.2d 987, 993 (1983).

The constitutional analysis applied to the laws that impede upon these inalienable rights is a means-end review, legally referred to as a substantive due process analysis. ***See Adler v. Montefiore Hosp. Ass'n of Western Pennsylvania***, 453 Pa. 60, 311 A.2d 634, 640–41 (1973); ***see also Moore v. City of East Cleveland, Ohio***, 431 U.S. 494, 500–05, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). Under that analysis, courts must weigh the rights infringed upon by the law against the interest sought to be achieved by it, and also scrutinize the relationship between the law (the means) and that interest (the end). ***See Adler***, 311 A.2d at 640–41; ***In re Martorano***, 464 Pa. 66, 346 A.2d 22, 26 (1975); ***see also Moore***, 431 U.S. at 500–05, 97 S.Ct. 1932;

*Lawrence v. Texas,* 539 U.S. 558, –––– , 123 S.Ct. 2472, 2477, 156 L.Ed.2d 508 (2003); *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of the government."). Where laws infringe upon certain rights considered fundamental, such as the right to privacy, the right to marry, and the right to procreate, courts apply a strict scrutiny test. *See Stenger v. Lehigh Valley Hosp. Center,* 530 Pa. 426, 609 A.2d 796, 799–802 (1992) (acknowledging right to privacy as fundamental right protected under Pennsylvania Constitution); *see also Roe v. Wade,* 410 U.S. 113, 163, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (women's right to terminate pregnancy is a fundamental interest protected under right of privacy); *Griswold v. Connecticut,* 381 U.S. 479, 485–86, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (recognizing right to marital privacy in the home as fundamental); *Lawrence,* 539 U.S. at –––– , 123 S.Ct. at 2474 (reaffirming fundamental privacy rights). Under that test, a law may only be deemed constitutional if it is narrowly tailored to a compelling state interest. *See*, *Stenger*, 609 A.2d at 802; *see also Roe*, 410 U.S. at 163, 93 S.Ct. 705; *Griswold*, 381 U.S. at 485–86, 85 S.Ct. 1678.

Alternatively, where laws restrict the other rights protected under Article 1, section 1, which are undeniably important, but not fundamental, Pennsylvania courts apply a rational basis test. *See Adler*, 311 A.2d at 640–41; *Pa. State Bd. of Pharmacy v. Pastor*, 441 Pa. 186, 272 A.2d 487, 490–91 (1971); *Pennsylvania Medical Society v. Foster*, 147 Pa.Cmwlth. 528, 608 A.2d 633, 637–38 (1992); *see also West Coast Hotel Co. v. Parrish,* 300 U.S. 379, 392, 57 S.Ct. 578, 81 L.Ed. 703 (1937) (recognizing that most interests are not absolute and are subject to rational basis test).  According to that test, which was defined by this Court almost a century ago, a law "must not be unreasonable, unduly oppressive or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained."[1] **Gambone***,* 101 A.2d at 637; **see also Adler***,* 311 A.2d at 640; **Pastor***,* 272 A.2d at 490–91; *Foster,* 608 A.2d at 637.

*Nixon*, 839 A.2d at 286–88.

Appellant asserts that his constitutional claims merit strict scrutiny analysis because he frames his challenge to the relevant DUI statutory scheme as one implicating MMA patients' fundamental rights to enjoyment, happiness, and reputation. The enjoyment and happiness, he explains, derive from the act of driving. As such, we construe his claim in this regard as one seeking to vindicate his purported fundamental right to experience enjoyment and happiness while driving.

However, Appellant cites to no precedent to support his proposition that the fundamental rights to enjoyment of one's life and the pursuit of happiness are encompassed in one's act of driving. It is well-settled that act of driving, itself, does not implicate a fundamental right, as it is merely a privilege. *See **Commonwealth v. Frederick***, 237 A.3d 1038 (Pa. Super. 2020); ***Commonwealth v. Bell***, 167 A.3d 744, 747 (Pa. Super. 2017), *affirmed*, 211 A.3d 761 (Pa. 2019), *cert. denied*, ---U.S. ----, 140 S.Ct. 934, 205 (U.S. Jan 21, 2020). ***See also Renfroe v. Cmwth.***, ***Dep't of Transp.***, 179 A.3d 644 648 (Pa. Cmwlth. 2018) (stating it is well-settled that driving in Pennsylvania is a privilege not a right). As such, we reject Appellant's notion that the derivative "enjoyment" or "happiness" one experiences through driving elevate the nature of the interest involved to a fundamental one. ***See***, ***e.g.***, ***In re Bartkowski Inv. Group***, 106 A.3d 230, ---, n. 5 (Pa. Cmwlth 2014) (observing jurisprudence deeming the right to "enjoyment of private property" protected under Article I, Section 1 of the Pennsylvania Constitution to be a

qualified right, which may be "reasonably limited" by zoning ordinances enacted pursuant to a municipality's police powers)[7](*citing **C & M Developers, Inc. v. Bedminster Twp. Zoning Hr'g Bd.,*** 820 A.2d 143, 150 (Pa. 2002)). **See also Johnston v. Township of Plumcreek**, 859 A.2d 7, 10-11 (Pa. Cmwlth 2004) (strict scrutiny review did not apply to municipal ordinance that residents claimed violated their fundamental "right to protect one's own life" under Article I, Section 1; despite complaint that government mandate to hook up to a new water main delivering water from unknown source increased the risk of illness from foul play or negligence and, therefore implicated fundamental right, court held such right not implicated). Therefore, we decline to apply a heightened level of judicial scrutiny of the DUI statute on this basis and review it, instead, for reasonableness.

So, too, do we reject Appellant's contention that heightened scrutiny of Section 3802(d)(1)(i) and (iii)'s applies on the question of whether it affects the reputation of MMA patients convicted under this statute. Our jurisprudence acknowledges that most interests and the laws that implicate them are reviewed under the rationale basis standard, **see Nixon**, **supra**, and this is so despite the inescapable fact that most if not all criminal

---

[7] While decisions of the Commonwealth Court are not binding upon us, they may serve as persuasive authority. **See Commonwealth v. Ortega**, 995 A.2d 879, 885 (Pa. Super. 2010).

convictions under such statutes will affect a defendant's reputation to some degree.

Herein, Appellant has not demonstrated how an MMA patient's reputation is peculiarly implicated in the present DUI context so as to distinguish his or her case from the vast majority of criminal cases. Indeed, Appellant's attempt to equate the ordinary reputational consequences of any criminal conviction, including one under Section 3802(d)(1)(i) or (iii), to the inapposite situation in *In re J.B.*, which held internet SORNA offender registry directly affects reputation, is misplaced, as the present matter involves neither the prospect of widespread publication of such information nor the real potential for a community rebuke. *See also Commonwealth v. Morgan*, 258 A.3d 1147, 1152-54 (Pa. Super. 2021) (in assessing fundamental interest in reputation, court focused on the extent to which sex offender information was readily available and/or accessible and to which it would subject him to ostracism and harassment); *T.G.A. v. Department of Education*, 302 A.3d 830 (Pa. Cmwlth. 2023) (holding Department's listing on a public website teacher's criminal charges after his acquittal and their expungement implicated teacher's substantive due process right to reputation; protection from false or misleading information affecting how one is regarded in community likelihood of public viewership and potential for consequential harassment and ostracism identified as key concerns in the reputational effects inquiry).

Unlike the governmental actions at issue in *In re J.B*., *Morgan*, and *T.G.A.*, the governmental act complained of in the case *sub judice* does not involve subject matter directly implicating one's reputation. Without a direct nexus between the government action involved and one's fundamental right to reputation, we decline to apply strict scrutiny review to this issue and, instead, review the DUI statute for reasonableness under the rational basis test.

Turning, then, to Appellant's equal protection claim, we note that "[t]he essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly." *Commonwealth v. Bullock*, 868 A.2d 516, 524 (Pa. Super. 2005), *affirmed*, 590 Pa. 480, 913 A.2d 207 (2006), *cert. denied*, 550 U.S. 941, 127 S.Ct. 2262, 167 L.Ed.2d 1103 (2007). However, "the principle does not absolutely prohibit the Commonwealth from classifying individuals for the purpose of receiving different treatment, ...and does not require equal treatment of people having different needs. Indeed, the Commonwealth may create legislative classifications so long as the classifications rest upon some ground of difference which justifies the classification and [have] a fair and substantial relationship to the object of the legislation." *Id.* (internal citations and quotation marks omitted). Thus, the Equal Protection Clause does not confer uniform protection to all persons under any circumstances or "obligate the

government to treat all persons identically." ***Commonwealth v. Shawver***, 18 A.3d 1190, 1194 (Pa. Super. 2011).

We reiterate the framework for deciding upon the level of judicial scrutiny, albeit with specific reference to an equal protection claim analysis:

> Equal protection analysis recognizes three types of governmental classification, each of which calls for a different standard of scrutiny. The appropriate standard...is determined by examining the nature of the classification and the rights thereby affected. In the first type of case, where the classification relates to who may exercise a fundamental right or is based on a suspect trait such as race or national origin, strict scrutiny is required. When strict scrutiny is employed, a classification will be invalid unless it is found to be necessary to the achievement of a compelling state interest.
>
> The second type of case involves a classification which, although not suspect, is either sensitive or important but not fundamental. Such a classification must serve an important governmental interest and be substantially related to the achievement of that objective.
>
> The third type of situation involves classifications which are neither suspect nor sensitive or rights which are neither fundamental nor important. Such classifications will be valid as long as they are rationally related to a legitimate governmental interest.
>
> ***Id.*** (quoting [***Bell***, 512 Pa. at 344–45, 516 A.2d at 1177–78 (1986)).
>
> Courts generally consider constitutional challenges involving criminal statutes, which create different groups of offenders or various sentencing categories going to the duration of confinement, as type-three classifications. ***Shawver***, ***supra***. A particular criminal statute will be deemed consistent with the Equal Protection Clause if the statute is rationally related to a

- 16 -

> legitimate government interest. ***Small v. Horn***, 554 Pa. 600, 615, 722 A.2d 664, 672 (1998). "[U]nder the rational basis test, if any state of facts can be envisioned to sustain the classification, equal protection is satisfied." ***Commonwealth v. Albert***, 563 Pa. 133, 141, 758 A.2d 1149, 1153 (2000). "Moreover, courts are free to hypothesize reasons why the legislature created the particular classification at issue and if some reason for it exists, it cannot be struck down, even if the soundness or wisdom in creating the distinction is questioned." ***Id***.

***Commonwealth v. Jezzi***, 208 A.3d 1105, 1112–13 (Pa. 2019).

The crux of Appellant's Equal Protection Clause challenge is that the DUI statutory scheme at Sections 3802(d)(1)(i) and (iii) impermissibly treats like persons in like circumstances differently when it requires impairment evidence to convict a driver who lawfully used a Schedule II/III prescription drug/controlled substance but not to convict a driver who lawfully used Schedule I prescription medical marijuana. He maintains that no basis in relevant fact exists to justify this disparate treatment. Appellant's brief at 5, *seriatim*.

We disagree that the two classes identified by Appellant involve like persons as that term is used in equal protection analysis, as only MMA patients are prescribed Schedule I controlled substances that the General Assembly has determined warrant utmost attention and oversight. Specifically, the relevant disparate treatment under Section 3801(d)(1)(i) accords with the General Assembly's identification of concerns specific to Schedule I illegal controlled substances with respect to not only their substantial potential for abuse but also the still evolving assessment of their medical value and

efficacy. Thus, our jurisprudence has recognized that although the General Assembly passed the MMA in acknowledgement of the benefit of a statutory scheme permitting a medical marijuana supply chain ending with lawful, therapeutic use of physician prescribed medical marijuana,[8] it also emphasized that ongoing concerns attendant to Schedule I marijuana required

_____

[8] In **Commonwealth v. Stone**, 273 A.3d 1163 (Pa. Super. 2022), *appeal denied*, 286 A.3d 213 (Pa. 2022) this Court acknowledged "the rapidly evolving state of the law regarding both medical and non-medical marijuana[]", as follows:

> Indeed, in Pennsylvania, legislation introduced on October 18, 2021, seeks to amend the DUI statutes, and among other things, remove marijuana from the list of Schedule I controlled substances in the CSA. **See** 2021 PA S.B. 473. Additionally, there have been efforts to remove marijuana from its Schedule I controlled substance designation at the federal level. **See Sisley v. U.S. Drug Enforcement Administration**, 11 F.4th 1029, 1031 (9th Cir. 2021); **see also Washington v. Barr**, 925 F.3d 109, 113 (2nd Cir. 2019).
>
> . . .
>
> Further, we note that even if the Pennsylvania Legislature enacted legislation to remove the Schedule I designation from marijuana under state law, such action would not impact the federal schedule for controlled substances. **See** 21 U.S.C. § 812(Schedule I)(c)(10); **see also** 21 C.F.R. § 1308.11(d)(23), (58). Accordingly, even if the schedule designation for marijuana under state law is changed, marijuana would retain its Schedule I designation under federal law unless and until federal legislation amends the federal controlled substances schedule. The Supremacy Clause, U.S. CONST., art. VI, cl. 2, establishes that the federal constitution and federal law generally, has precedence over state law, including state constitutions.

**Stone**, 273 A.3d at 1171 n. 9.

both the continued classification of marijuana as a Schedule I controlled substance and the legislative acknowledgement that the Act, itself, was to be a *temporary* measure making medical marijuana available for potential therapeutic uses through strictly controlled measures and protocols that when followed, would not lead to criminal punishment. ***See Commonwealth v. Dabney***, 274 A.3d 1283 (Pa. Super. 2022), *appeal denied*, 286 A.3d 1233 (Pa. 2022); ***Jezzi***, 208 A.3d at 1114.

For purposes of driving after use of the controlled substance, therefore, the MMA retained the classification distinctions between the otherwise illegal controlled substances listed in Schedule I and the lawful controlled substances Schedules II and III.

> The MMA did not remove marijuana from the list of Schedule I controlled substances. ***Jezzi***, 208 A.3d at 1115. There is no need for "medical marijuana" to be listed as a Schedule I controlled substance because medical marijuana **is** marijuana, specifically marijuana "for certified medical use." 35 P.S. § 10231.103. All marijuana, medical or otherwise, remains a Schedule I controlled substance in Pennsylvania. ***Stone***, 273 A.3d at 1172-73.
>
> Section 3802(d)(1)(i) prohibits driving with marijuana in one's blood, notwithstanding the MMA. The MMA takes precedence over the CSA related to "[t]he growth, processing, manufacture, acquisition, transportation, sale, dispensing, distribution, possession and consumption of medical marijuana permitted under" the MMA. 35 P.S. § 10231.2101. Therefore, "compliance with the MMA will not constitute a crime under the CSA." ***Commonwealth v. Barr***, ––– Pa. ––––, 266 A.3d 25, 41 (2021) (quoting ***Commonwealth v. Barr***, 240 A.3d 1263 (Pa. Super. 2020)). However, what Section 3802(d)(1) prohibits is not "growth, processing, manufacture, acquisition, transportation, sale, dispensing, distribution, possession [or] consumption of medical marijuana" but rather **driving** with a controlled substance in one's blood. ***Yeager***, ***supra***, at *7 (Stabile, J., concurring)

("Simply stated, it is illegal to smoke or vape marijuana and drive.").[9] The MMA does not take precedence over laws **not** specified in 35 P.S. § 10231.2101.  **See** 35 P.S. § 10231.1309(1) (allowing civil and criminal penalties for negligently undertaking tasks under the influence of medical marijuana).

**Dabney**, 274 A.3d at 1291–92.

Accordingly, given both the General Assembly's consideration of the specific, unique risks associated with Schedule I controlled substances when it enacted the MMA, and marijuana's continued classification under Schedule I, we discern no improper discrimination stemming from the General Assembly's retention of Section 3802(d)(1)(i) and (iii) during implementation of the MMA.  That Section 3802(d)(1)(i) and (iii) potentially affects MMA patients differently than Schedule II/III prescription medication patients is simply the result of the General Assembly's legitimate measure to deter the public from ingesting Schedule I controlled substances and driving.

In his second issue, Appellant asserts that the DUI statute violates the substantive due process rights of MMA patients who use medical marijuana prescribed by a physician to treat their medical conditions because the statute is overly broad and encompasses lawful conduct, namely, driving while unimpaired.  He argues:

> The DUI statute's criminalization of the mere presence of marijuana or any of its metabolites in an individual's blood, without proof of impairment, on its face punishes a status (having any amount of marijuana or any of its active or inactive metabolites in an individual's blood) which is overbroad and bears no relationship to the legitimate interest of keeping the roads safe by removing impaired drivers.  Even the presence of inactive metabolites of marijuana, which have no effect on a person's

- 20 -

ability to drive as they are by definition inactive (and which can remain in a person's system for weeks or even a month) is pre se criminalized by the current DUI statute. In this regard, the testimony of all three experts at trial (and the expert reports) confirmed that the presence of inactive marijuana metabolites alone would have no effect on a person since they are inactive by definition. Under the DUI statute, however, the presence of even one detectable nanogram of any inactive marijuana metabolite would be enough to convict a medical marijuana patient of DUI.

In addition, the overbroad nature of the DUI statute in this regard is evidenced by the fact that even a person who inhaled secondhand marijuana smoke, or used marijuana in another jurisdiction outside of Pennsylvania weeks in the past, would fall within the scope of the DUI statute even if they only had inactive metabolites of marijuana in their system, without any evidence of impairment to drive safely. Family members and/or friends of patients who use medical marijuana are placed in jeopardy of being charged and convicted of a DUI offense in Pennsylvania simply because they were exposed to secondhand marijuana smoke.

Brief for Appellant at 41.

A statute is unconstitutionally overbroad "only if it punishes lawful constitutionally protected activity as well as illegal activity. Thus, in determining whether a statute is unconstitutional due to overbreadth, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." ***Commonwealth v. McCoy***, 69 A.3d 658, 662 (Pa. Super. 2013) (cleaned up).

Appellant's overbreadth argument posits that Section 3802(d)(1)(i) unconstitutionally criminalizes what should be lawful conduct, that is, driving while unimpaired. Because the statute reaches those who drive with the presence of inactive metabolites lacking any potential to impair their driving,

it comes under jurisprudence invalidating unconstitutionally overbroad statutes. We find Appellant's argument unavailing.

In **Commonwealth v. Murphy**, 239 A.3d 96 (Pa. Super. 2020) (non-precedential decision)[9], a panel of this Court rejected the appellant's argument that, given the MMA's authorization to use medical marijuana under specific protocols, Section 3802(d)(1)(i) is unconstitutionally overbroad because its proscription of driving with Schedule I marijuana or its metabolites in one's blood punishes lawful as well as unlawful usage. The panel majority dismissed the issue in short shrift, observing that he "cite[d] to no authority to support that driving with marijuana metabolites in one's blood, or utilizing marijuana in any context, amounts to "constitutionally protected conduct." **Id**. at *2.

This Court previously had addressed the same substantive due process challenge to section 3802(d)(1) and determined the statute is neither vague nor overbroad because there exists no constitutional right to ingest marijuana prior to driving. In **Commonwealth v. Etchison**, 916 A.2d 1169 (Pa. Super 2007), defendant/appellant Etchison argued on appeal that the DUI statute was overbroad and thus violated due process because it permitted his conviction solely on the presence of metabolites, regardless of actual impairment. To this effect, he maintained that "an individual could be sober

---

[9] Pursuant to the Pennsylvania Rules of Appellate Procedure, we may cite non-precedential memorandum decisions of this Court that were filed after May 1, 2019, for their "persuasive value." Pa.R.A.P. 126(b)(1)-(2).

and simply have residue of past usage in their blood. . . . Passive inhalation of marijuana smoke, false positives or residue in the body long after a period of impairment would all be a violation of the statute. The statute sweeps too broadly and causes conviction of both sober as well as impaired drivers." *Id*. at 1173.

The *Etchison* majority explained succinctly that there was "no constitutional right to the use of marijuana prior to driving," and affirmed his conviction under Section 3802(d)(1)(i). *Id*. at 1174. While the decision further recognized that there was also no right to the use of marijuana at the time, this observation does not affect the constitutionally based rationale that Section 3802(d)(1)(i) survives a due process, overbreadth attack from one who ingests marijuana and drives with marijuana metabolites in his blood. *Id.* at 1173-74.

The *Etchison* holding applies to the present matter, as there continues to exist no constitutional or legal right to drive with consumed marijuana or its metabolites in one's system. Appellant's assertion of fundamental rights to enjoyment, happiness, and security in reputation while driving, for reasons discussed *supra*, reveals no cause to invalidate Section 3802(d)(1)(i) when the General Assembly has a legitimate interest to apply its police powers through the statute to deter driving with Schedule I controlled substances in one's system, not only because of their association with high risk of abuse and uncertain medical value, but also, in the case of marijuana, because of the

challenges associated with predicting when active metabolites capable of impairment may return to the bloodstream. Our jurisprudence has acknowledged the General Assembly's ongoing study and consideration of marijuana's classification under Schedule I as it relates to both the DUI statute and the MMA, and it has retained Section 3802(d)(1)(i) as it was written the time of *Etchison*. Accordingly, we discern no unconstitutional, significant overbreadth with the statute, as it coexists with the MMA as a reasonable, rational measure to advance the legitimate governmental interest in limiting driving after marijuana use and promoting lawful marijuana usage by MMA patients. Accordingly, Appellant's substantive due process claim fails.

In Appellant's final issue, he contends that the DUI statute, both on its face and independently as applied to Appellant, violates the procedural due process guarantees and rights provided by the Pennsylvania Constitution because it creates an unconstitutional irrebuttable presumption of guilt for patients who use medical marijuana lawfully. The irrebuttable presumption is that patients lawfully taking Schedule I medical marijuana are unable to drive safely when they have any amount of marijuana or metabolite thereof in their blood. As such, the statute requires no evidence of impaired ability to drive safely. In contrast, the DUI statute's subsection applicable to patients taking prescription Schedule II/III controlled substance requires evidence of impaired driving to convict.

Appellant maintains that the statute's irrebuttable presumption of guilt unconstitutionally denies medical marijuana patients and those who inhale secondhand marijuana smoke of their procedural due process rights to rebut this presumption of DUI with proof that their ability to drive safely was not impaired. This was demonstrated in his trial, he maintains, as he was acquitted on the count of DUI-Impairment but convicted on the counts related to marijuana metabolites being present in his blood at the time of driving.

Appellant points to expert witnesses who offered unchallenged testimony at his trial that active metabolites in the blood do not necessarily mean impairment, as they may show up in the blood of a regularly using patient's blood weeks after the most recent use of medical marijuana, or may not cause impairment immediately after consumption.[10] Inactive metabolites, they explained, cause no impairment and would not affect a patient's driving.

Yet, Appellant argues, such testimony which ought to bear on the pertinent issue of safe, unimpaired driving under Section 3802(d)(1)(i) is rendered irrelevant because of the subsection's irrebuttable presumption of guilt resting solely upon the presence of Schedule I marijuana or marijuana metabolites in the driver's blood at the time of driving. Thus, he concludes the statute is unconstitutional on the same rationale expressed in *In re J.B.*, *supra* (SORNA violates juvenile offenders' due process rights through use of an irrebuttable presumption of recidivism), namely, that the presumed fact

_____

[10] Appellant's blood test revealed active Delta-9-THC metabolites in his blood.

underlying the irrebuttable presumption here "is not universally true and reasonable alternative means of ascertaining the presumed fact are available. . . ." *Id*.

Section 3802(d)(1)(i) rests not on an irrebuttable presumption of impaired driving but, instead, on a *per se* proscription against driving while there is present in one's blood a Schedule I controlled substance or a metabolite thereof. In **Commonwealth v. Karner**, 193 A.3d 986, 990 (Pa. Super. 2018), this Court acknowledged "75 Pa.C.S.A. § 3802(d)(1)(iii), concerning metabolite in the blood, is a strict liability offense *per se* and does not have a *mens rea* of recklessness or gross negligence. **See generally Commonwealth v. Jones**, 121 A.3d 524, 529 (Pa. Super. 2015) (stating: '[T]he Vehicle Code precludes an individual from operating a motor vehicle with **any** amount of scheduled controlled substance, or a metabolite thereof, in the driver's blood') (emphasis in original)." **See also** 10A West's Pa. Prac., Driving Under the Influence § 27:36 (2022 ed.) ("There is no requirement [in § 3802(d)(1)] that the individual be either "under the influence" of the prohibited substance or that the person's ability to operate a vehicle safely be impaired in any way."). Indeed, the DUI statutory scheme has a separate subsection, Subsection 3802(d)(2), attaching criminal liability based specifically on evidence of impairment. Accordingly, we deem **In re J.B.** inapposite on this issue and, thus, discern no merit to Appellant's procedural due process argument.

For the foregoing reasons, we deny Appellant's appeal and affirm judgment of sentence.

Judgment of sentence affirmed.

Judge Nichols joins the opinion.

Judge Lazarus files a dissenting opinion.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/23/2024